UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02155-WYD

MARLENA GRABCZYK,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for an immediate award of benefits.

I.    <u>BACKGROUND</u>

Plaintiff was born in 1964.  She was 34 years old on her alleged onset of disability date in January 1999 and 36 years old when her insured status expired in December 2000.  (Administrative Record ["AR"] 58.)  She has a high school education and worked as an electronics tester, hand packager, carpenter, and cashier/checker. (*Id.* 79, 90, 599.)

In March 2005, Plaintiff filed an application for disability benefits under Title II of the Act claiming that she became disabled on June 17, 1998, due to back pain, fibromyalgia, migraines, vertigo, irritable bowel syndrome, chondritis, colitis, and

depression.  (AR 58.)  Her claim was denied initially and after a hearing by an administrative law judge ["ALJ"].  (*Id*. 25, 466-73, 519-43.)  The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision and remanded the case for further proceedings.  (*Id*. 475-76.)  It found that the ALJ had not addressed opinions of two treating sources, Mitchell Goldbaum, M.D. and Thomas Sachtelben, M.D., to the effect that Plaintiff was disabled.  (*Id*. 475.)  On remand, the ALJ was ordered, among things, to "[a]ddress all relevant medical opinion evidence, providing supporting rationale for the weight assigned thereto."  (*Id*.)

After a new hearing (AR 544-49), the ALJ on May 9, 2007, again determined that Plaintiff was not disabled.  (*Id*. 12-21.)  The Appeals Council declined review of the decision.  (*Id*. 7-9.)  Plaintiff sought judicial review, and this Court in a previously filed case granted Defendant's Unopposed Motion to Remand.  (*Id*. 610-16.)  In the Order of Remand, the Court noted that the Appeals Council for the SSA had determined that a remand was appropriate.  (*Id*. 613.)  Pursuant to the remand, the ALJ was "to reevaluate all of the medical evidence of record and provide affirmative reasons, linked to specific evidence in the record, for the weight accorded to all of the medical opinions; to redetermine Plaintiff's residual functional capacity ["RFC"] based on the combination of all of Plaintiff's impairments. . . including any limitations imposed by her alleged pain and mental impairment(s). . . ."  (*Id*. 613-14.)  Thus, the ALJ's decision was vacated by the Appeals Council and the case was remanded for further proceedings.  (*Id*. 617).

A different ALJ held a new hearing on September 4, 2008.  (AR 579-609.)  Prior to the hearing Plaintiff amended her alleged disability onset date to January 4, 1999.

(*Id.* 592-93.)  In a decision dated April 10, 2009, the ALJ concluded that Plaintiff was not disabled.  (*Id.* 558-78).  That is the decision at issue in this case.

More specifically, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2000.  (AR 563, Finding 1.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity from her amended onset date of January 4, 1999, through her date last insured.  (*Id.*, Finding 2.)

At step two of the sequential evaluation, the ALJ found that, through the date last insured, Plaintiff had the following "severe" impairments: chronic pain complaints about the thoracic spine, variously diagnosed as facet versus discogenic pain; probable costovertebral musculoligamentous strain; cervical and thoracic ligamentous instability, and mechanical joint dysfunctions in the cervical and thoracic spine; and chronic pain disorder with somatic complaints about the thoracic costovertebral junctions.  (*Id.*, Finding 3.)  At step three, she found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria in one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 ["Listing of Impairments"].  (*Id.* 569, Finding 4).

Turning to Plaintiff's capacity to work, the ALJ found through the date last insured that Plaintiff had the RFC "to perform sedentary work . . . that did not require standing and/or walking more than six hours during an eight-hour workday."  (AR 569, Finding 5.)  At step four the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* 574, Finding 6.)  At step five, however, the ALJ found that, through the date last insured, there were jobs existing in significant numbers in the national economy that

Plaintiff could have performed. (*Id.*, Finding 10.) Thus, the ALJ found that Plaintiff was not disabled from January 4,1999, the alleged onset date, through December 31, 2000, the date last insured. (*Id.* 575, Finding 11.)

The Appeals Council considered Plaintiff's exceptions, but declined to assume jurisdiction. (Tr. 550-57.) This appeal followed. The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

Plaintiff claims that the ALJ did not base her decision on substantial evidence when she rejected the opinions of treating physicians Drs. Goldbaum and Higginbotham and instead relied on the check the box form of the State Agency Single Decision Maker and Dr. Sachtelben's opinions, choosing only those limitations that supported a finding of non-disability. Plaintiff also argues that the ALJ's credibility findings are not based on factors linked to and based in the evidence.

The Commissioner maintains in response that the ALJ properly evaluated Plaintiff's RFC during the relevant period and that she properly evaluated the opinions of Plaintiff's treating physicians. He further asserts that the credibility finding was proper as it was closely and affirmatively linked to substantial record evidence. Accordingly, he argues that the Court should sustain the ALJ's decision.

II.     ANALYSIS

A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.     <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

           1.     <u>The Weighing of the Medical Evidence</u>

The ALJ based her decision on the report of treating physician Dr. Sachtelben from October 6, 1998, and the decision of the State Agency Single Decision Maker who did not examine Plaintiff and is not a medical provider but whose decision the ALJ noted was reviewed and confirmed by a State Agency Medical Consultant. (AR 573.) The ALJ gave "little weight" to treating physician Dr. Goldbaum's opinion of January 4, 1999 and treating physician Dr. Higgenbotham's opinion issued in June 2000, and "no weight" to the opinion of Dr. Ravin. I find that, as with the two previous decisions of the administrative law judges in this case, Plaintiff's medical evidence was not properly weighed and that the ALJ did not use the proper legal standards. Accordingly, this case must be reversed.

I first address the evidence that the ALJ relied on in reaching her RFC assessment that Plaintiff could perform a full range of sedentary work. As noted above, the ALJ gave substantial weight to Dr. Sachtelben's October 6, 1998 opinion. She characterized this report as allowing Ms. Grabczyk to "sit, stand, and walk each for one-hundred percent of an eight-hour day, could lift 10 pounds; could frequently kneel, bend and squat; could occasionally climb; and could rarely reach and/or twist." (AR 572-573.) That report also includes a limitation to typing only 10% of the time (*id* 334), but the ALJ did not mention this part of that opinion or address it in her findings.[1] She nonetheless found that this report, as she characterized it, was entitled to "significant weight" even though, in the same sentence, she found that it was not well-supported by the objective findings. (*Id.* 573.) I find errors with the ALJ's findings regarding this medical provider.

First, as Plaintiff notes, this opinion was issued before her amended onset date. By definition, "[t]he onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at 1 (1983). The ALJ did not contest this amended onset date in the decision. While evidence before an onset date in the record can properly be considered for purposes of considering the progression of a claimant's impairments, *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *5 (10th Cir. 2009), I find it improper to rely on that evidence to ultimately determine the claimant's RFC. *See Selk v. Barnhart*, 234 F. Supp. 2d 1006, 1014 (S.D. Iowa 2002) ("[E]vidence outside the relevant time period cannot serve as the only

---

[1] The same is true of the previous decision of an ALJ in this case from May 2007, who also relied on Dr. Sachtelben to find that Plaintiff was able to perform sedentary work. (AR 20-21.)

support for the disability claim. 'Such a holding would be contrary to the Social Security Act. . . which requires proof of disability during the time for which it is claimed.'") (quoting *Pyland v. Apfel*, 149 F.3d 873, 878 (8th Cir. 1998)); *see also Bannister v. Astrue*, ___ F. Supp. 2d ___, 2010 WL 3184308, at *3 (S.D. Iowa 2010) ("records and medical opinions from outside the insured period can only be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded'") (quoting Cox *v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). Thus, I find that the RFC determination must be made from evidence within the period of claimed disability.

I also agree with Plaintiff that the ALJ committed two additional errors in giving "significant weight" to Dr. Sachtelben's decision. First, in order for a treating physician's opinion to be entitled to significant or controlling weight, it must be "'well supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2 (1996) (quotations omitted)). Here, by the ALJ's own finding, it was not. Thus, she erred in giving significant weight to that opinion. Second, the ALJ failed, without explanation, to give weight to all of the findings in Dr. Sachtelben's opinion. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of non-disability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Specifically, the ALJ left out the fact that Dr. Sachtelben stated in his assessment that a return date to work was indeterminable, indicating at that time he did not think she could work. She also left out the limitation in Dr. Sachtelben's report to typing only 10%

of the workday.  The vocational expert testified that such a limitation would result in the

elimination of two of the three jobs the ALJ used to deny this claim; namely, those of

telephone quotation clerk and charge account clerk.  (AR 606.)  Even if that limitation

would still allow work as a "vehicle escort driver," the ALJ made no finding that this job,

alone, existed in significant numbers.  This Court cannot independently make that

determination without engaging in impermissible *post hoc* reasoning in an attempt to

salvage the ALJ's decision.  Such efforts "usurp essential functions committed in the

first instance to the administrative process."  *Allen v. Barnhart*, 357 F.3d 1140, 1142,

1145 (10th Cir. 2004).

A determination as to whether a job exists in significant numbers is not solely

based on the number of jobs; the ALJ must also consider factors such as the level of

the disability, the reliability of the vocational expert's testimony, the distance and ability

of the claimant to gravel to the assigned work, and the types and availability of such

work.  *Allen*, 357 F.3d at 1145 (citing *Triamar v. Sullivan*, 930 F.2d 1326, 1330 (10th Cir.

1992)).  In other words, "judicial line-drawing in this context is inappropriate,. . . the

issue of numerical significance entails many fact-specific considerations requiring

individualized evaluation . . . [which] 'should ultimately be left to the ALJ's common

sense in weighing the statutory language as applied to a particular claimant's factual

situation.'"  *Id.* (citing *Triamar*, 930 F.2d at 1330).

Since I find that the ALJ's reliance on Dr. Sachtelben's opinion issued before the

amended onset date was erroneous, I must look at the other evidence the ALJ relied on

in assessing Plaintiff's RFC.  That is the check the box form filled out by a State agency

"single decision maker" that the ALJ gave "significant weight" to.  (AR 573-574.)  I find

that reliance on this report was also error.  Even if it is "co-signed" by a physician, the

Tenth Circuit holds that an evaluation form such as this, standing alone and

unaccompanied by written reports or testimony, does not constitute substantial

evidence.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004).  The findings of a

non-treating physician based on little contact or examination is of "suspect reliability."

*Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Further, this report does not appear to be supported by other substantial

evidence as required for the ALJ to be able to rely on it.  *See Lee v. Barnhart*, No. 03-

7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004) (if the ALJ relies heavily on

opinion of an agency medical consultant that did not examine the claimant, those

"opinions must themselves find adequate support in the medical evidence").  Indeed,

the opinions of the other medical providers within the period of disability all appear to

support a RFC that is much more restricted than the RFC noted in this form.

Based on the foregoing, I find that the ALJ's RFC determination, in which the ALJ

relied on the opinions of Dr. Sachtelben and the state agency decision maker, is not

supported by substantial evidence.  I also find other errors with the weighing of the

medical evidence.  In so doing, I turn to the medical opinions that the ALJ gave little to

no weight to.

First, while the ALJ stated that she gave "little weight" to the opinions of

Drs. Goldbaum and Higgenbotham, it appears that she gave them no weight.  However,

her opinion does not make this clear.  If she did give the reports some weight, she does

not make clear what portion of their opinions she gave weight to.  This is error.  *See*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("the notice of determination

or decision 'must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for

that weight'") (quoting SSR 96-2p, 1996 WL 374188, at *5).

Further, Plaintiff asserts that these providers were treating physicians.  The ALJ

did not address this, or conduct the proper legal analysis to determine if their opinions

as treating physicians should be given controlling weight.  A treating physician's opinion

must be given substantial or controlling weight unless good cause is shown to disregard

it.  *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90

(10th Cir. 1994).  The ALJ did not determine this issue.  Even when an ALJ decides that

a treating physicians' opinions are not dispositive and not entitled to controlling weight,

that does not allow him to reject their opinions outright.  *Langley v. Barnhart*, 373 F.3d

1116, 1120 (10th Cir. 2004).  Instead, their opinions are "'still entitled to deference and

should be weighed using all of the [relevant] factors.'"  *Id.* (quoting *Watkins*, 350 F.3d at

1300).  The ALJ's opinion should reflect that she gave these reports deference and

weighed them, and that the ALJ considered " what lesser weight the opinion should be

given" or discussed the relevant factors set out in 42 U.S.C. § 404.1527.  The ALJ did

not follow these rules.  This error alone requires reversal and a remand of the case.

*Watkins*, 350 F.3d at 1301; *see also Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir.

2005) ("The 'failure to apply the correct legal standard[s] or to provide th[e] court with a

sufficient basis to determine that appropriate legal principles have been followed is

grounds for reversal.'") (quotation omitted); *Andersen*, 2009 WL 886237, at *6) ("the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient. . .").

I now turn to Dr. Goldbaum's report, dated on the onset date of disability, January 4, 1999. (AR 160.) The ALJ correctly noted that this report recommended that Plaintiff work only part-time, four hours per day, at sedentary duty, with five-minute rest breaks out of every 30 minutes to stretch before resuming her seated position. The significance of this opinion is that, if adopted as to Plaintiff's RFC, it would not allow a return to "regular and continuing" employment as contemplated by SSR 96-8p, 1996 WL 374184 (July 2, 1996), and a finding of disability would be required. The ALJ gave this opinion "little weight" because she was not persuaded that it was an opinion of Plaintiff's maximum RFC, it was not supported by objective medical findings, and it was inconsistent with Dr. Sachtelben's opinion, discussed above, from two months' earlier. (AR 573.)

Although the ALJ states that she was "unpersuaded" that this opinion represented Dr. Goldbaum's opinion as to Plaintiff's maximum RFC (AR 573), she cites no evidence to support that conclusion. She also stated without evidentiary support that this opinion "appears to have been a set of restrictions designed to let the claimant ease back into the work force." (*Id.*) Dr. Goldbaum continued to treat Plaintiff for an additional 15 months after this opinion was issued, and never retracted this opinion. Further, nothing in his records supports the ALJ's findings. Thus, the above findings of the ALJ are mere speculation and unsupported. "[A]n ALJ may not make speculative

inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original and quotation omitted). At the very least, the ALJ should have contacted Dr. Goldbaum to determine what this opinion represented rather than making speculative, unfounded assumptions. *Id.*

Second, contrary to the ALJ's finding, Dr. Goldbaum's opinion was in fact supported by objective medical findings. Before issuing this opinion, Dr. Goldbaum had noted, among other things, that Plaintiff had diminished sensation on her lower extremities, only a "1/5 Waddell's score," regional weakness, and sensory impairments". He found that she had a "notable absence of superficial and non-anatomic tenderness" and was "exquisitely tender along the spinous process of approximately T5 through T8" and "along the left paraspinals at the corresponding region." (AR 165.) He also saw Plaintiff additional times and made medical findings. A medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Id.* (finding error with the ALJ's decision to reject the opinions of treating physicians because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that Plaintiff's condition deteriorates under stress is a specific medical finding).

Third, the fact that Dr. Goldbaum's opinion was inconsistent with Dr. Sachtelben's opinion from two months earlier is not a good reason to completely

discount it, particularly since Dr. Sachtelben's opinion was issued prior to the onset date and was not well-supported according to the ALJ. Indeed, "'when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around.'" *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. Feb. 20, 2003) (quoting *Goatcher*, 52 F.3d at 290). The ALJ did not appear to follow this rule.

I now turn to the opinion of Dr. Higgenbotham, also a treating physician according to Plaintiff. In June 2000 Dr. Higginbotham opined that Plaintiff could sit, stand, and walk, each for only 30% of an 8 hour day, do no typing, lift 10 pounds or less, drive and travel only 10% of the day, rarely bend, reach, kneel, climb, squat, or twist, and that Plaintiff had only "medium" level manual dexterity. (AR 360.) He rated her physical impairment as that of "moderate limitation of functional capacity, capable of clerical/administrative activity" and that mentally, she could only engage in work with limited stressful situations and limited interpersonal relations. (*Id.* 361.) The ALJ gave this opinion "little weight" because she found it was not supported by objective findings and was inconsistent with other substantial evidence. I find that the ALJ's reasons for rejecting Dr. Higginbotham's opinion are also not valid.

Regarding the lack of objective findings, Dr. Higginbotham conducted a physical examination upon first treating Plaintiff three months before issuing the above report. (AR 196-197.) He diagnosed Plaintiff with "Costovertebral musculoligamentous strain with reactive middle trapezius and rhomboid myospasms, chronic and moderate" and

"Chronic pain disorder". (*Id.* 197.) He made those diagnoses based on specific medical findings from his physical examination of Plaintiff. (*Id.* 197, 200.) Based on his findings, he referred Plaintiff to Dr. Ravin to begin prolotherapy injections. At the time he issued the report he had, himself, started to treat Plaintiff with osteopathic manipulation in conjunction with the prolotherapy administered by Dr. Ravin and made further medical findings regarding Plaintiff's condition. Accordingly, I find that there were objective findings that supported Dr. Higginbotham's opinion.

To the extent the ALJ stated that Dr. Higginbotham's opinion was inconsistent with other substantial evidence, again I find error. To the extent she may be referring to Dr. Sachtelben's opinion or that of the State Agency Single Decision Maker, I found error with her reliance on these opinions as discussed previously. Further, his typing restriction was generally supported by Dr. Sachtelben. The ALJ also failed to recognize that Dr. Higginbotham's opinion was generally supported by the opinions of Drs. Goldbaum and Ravin.

The significance of the ALJ's error in failing to give proper weight to the opinion of Dr. Higginbotham is that, like Dr. Goldbaum's opinion, the limitations contained therein would not allow a return to jobs that exist in significant numbers. First, the ability to perform a full range of sedentary work (the basis for the ALJ's denial of the claim) requires the ability to sit for six hours in an eight hour day. Dr. Higginbotham's opinion allows for Ms. Grabczyk to sit only 30% of an 8 hour day, or approximately 2.5 hours, rendering her unable to perform a full range of sedentary work. The opinion also limits her to jobs involving only "medium" manual dexterity. In a prior hearing a vocational

expert, Martin Raur, testified that the limitation to jobs requiring only "medium" manual dexterity would leave only about 5% of the workforce for sedentary work, implying that these jobs would not exist in significant numbers. (AR 540-541.)

Finally, I find errors with the ALJ's decision to give no weight to the opinion of Dr. Ravin, who performed a myofascial pain evaluation of Plaintiff at the request of Dr. Higgenbotham. (AR 330-31.) He signed a disabled parking permit form on June 2, 2000, opining that Plaintiff was in the category of "persons who have a disability that would be aggravated by walking 150-200 feet under normal environmental conditions and a resultant mobility impairment of the same degree as described in the four criteria above." (AR 344.) The ALJ gave this opinion no weight because she found Dr. Ravin based this opinion solely on Plaintiff's subjective complaints, that it was not well supported by objective medical findings, and, as with Dr. Goldbaum's opinion, it was inconsistent with Dr. Sachtelben's October 1998 report. (AR 573.) I find that these are not valid reasons for rejecting Dr. Ravin's assessment.

First, the ALJ erred in rejecting Dr. Ravin's opinion because she believed it was based solely on Plaintiff''s subjective complaints. An ALJ is not entitled to reject the opinions of a medical provider "based merely on h[er] own speculative conclusion that the report was based only on claimant's subjective complaints." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). "The ALJ [must have] a legal or evidentiary basis for h[er] finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain. Here, the ALJ cited no legal or evidentiary basis for her ruling. *See id.*; *see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3

(10th Cir. July 13, 2006) ("This court has made it clear that when an ALJ rejects a medical opinion . . . based on his speculation that the doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from correct legal standards and his decision is not supported by substantial evidence") (citing *Langley,* 373 F.3d at 1121).

Indeed, two months before issuing this opinion, Dr. Ravin had conducted a physical examination and diagnosed Plaintiff with cervical and thoracic ligamentous instability and mechanical joint dysfunctions in the cervical and thoracic spine.  (AR 331.)  On the day of the opinion at issue, he noted that there had been no change in the interval and began the prolotherapy injection process.  (*Id.*  328.)  Thus, contrary to the ALJ's findings, this opinion in the parking permit was supported by objective medical findings based on a physical examination of the Plaintiff.  It was also supported, at least in part, by the opinions of Drs. Goldbaum and Higgenbotham.  Finally, regarding the comparison with Dr. Sachtelben's October 1998 report, here again the ALJ's finding is in error for the same reasons as discussed above in connection with Dr. Goldbaum.

Thus, contrary to the requirements of the regulations and case law, the ALJ failed to properly weigh the medical opinions of Drs. Goldbaum, Higginbotham and Ravin, and did not give good or valid reason for giving their opinions little to no weight.  She instead improperly gave significant weight to an opinion that she found to be not supported by substantial evidence as well as the opinion of a non-examining State agency Decision Maker  who expressed his opinion only in a "check the box" form that is of "suspect reliability."  These errors require reversal and a remand of the case to the Commissioner.

## 2. The ALJ's Credibility Analysis

I also find errors with the ALJ's credibility analysis. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to have caused the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms, prior to the date last insured, are not credible to the extent they are inconsistent" with the ALJ's RFC assessment. (AR 570.) She cited three factors to support this finding: that Plaintiff's reporting of her response to treatment was inconsistent; that she failed to follow prescribed treatment; and that there was evidence of "symptom magnification". (*Id.* 570-572.) I agree with Plaintiff that these factors are not based in substantial evidence, as required by the law of this circuit. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ's finding that Plaintiff reported inconsistent results from her treatment is an example of an ALJ impermissibly culling the evidence for isolated bits of evidence to support her conclusion or for statements in doctors' notes that are only marginally inconsistent with each other. *See Kirby v. Astrue*, 568 F. Supp. 2d 1225, 1235 (D. Colo. 2008). For example, the ALJ cites Plaintiff's statement that massage had caused her increased pain, but another statement the next day that it had helped. (AR 570.) In fact, Plaintiff was consistent in noting that *deep tissue* massage caused her additional pain. On early 1999 she told her physical therapist that since she started getting *deep tissue* massages, her pain had increased. (AR 132, 137.) She made a similar statement to Dr. Finn in June 1999. (*Id.* 145.) On the other hand, normal massage

helped somewhat.  (*Id.* 336.)  These statements are not inconsistent, given that deep massage appears to different than ordinary massage.

Further, in citing Plaintiff's "failure to follow prescribed treatment" the ALJ acknowledged that she did not, as required by SSR 82-59, make the necessary inquiry into Plaintiff's reasons, if any, for these so-called failures.  She did not give Plaintiff an opportunity to indicate whether she was aware of the so-called recommendations by her doctor, whether they were prescriptions as compared to mere recommendations and, if they were prescribed, whether she followed them or attempted to follow them.  There was also evidence in the record that Plaintiff had difficulty paying for these treatments (AR 156), as well as evidence in the record that she was told to discontinue many of the treatments referenced by the ALJ.  (*Id.* 146.)  The ALJ did not consider these factors either.  Based on the foregoing, it was improper for the ALJ to use this issue as a credibility factor without giving Plaintiff an opportunity to address it, as required in SSR 82-59.  *See Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985).

The ALJ found, however, that delaying the claim to do this assessment would not change the outcome.  (AR 571.)  I disagree, as she used this as a factor in finding Plaintiff not credible.  Contrary to the ALJ's finding, her failure to follow the dictates of Social Security Ruling 82-59 may well have affected the outcome of the claim.

Finally, in support of her finding that Plaintiff exhibited "symptom magnification," the ALJ cites the fact that Dr. Lazar initially found that Plaintiff had "5/5 Waddell's signs." (AR 572, 116.)  She then improperly quotes, without citation, an explanation of these Waddell's signs.  (*Id.*)  "Waddell's signs are indications that a patient has non-organic

pain." *Wall v. Astrue*, 561 F.3d 1048, 1956 n. 10 (10th Cir. 2009). "They are used to identify patients who may require detailed psychological assessment" and "[t]hree or more Waddell signs are deemed clinically significant." Id. Thus, Waddell signs may be indicative of psychological issues rather than malingering and, as conceded by the Commissioner, are not conclusive evidence of symptom magnification. *See also Wick v. Barnhart*,, No. 04-35579, 2009 WL 584749, at *1 (9th Cir. 2006) ("the Waddell test does not by itself constitute 'affirmative evidence' of malingering. . . .[t]he test . . . does not distinguish between malingering and psychological conditions").

Moreover, this evidence from Dr. Lazar appears to have been before the amended onset date of disability. A subsequent Waddell screen by treating physician Dr. Goldbaum resulted in only 1 out of 5 signs, which, as noted above, is not clinically significant. (AR 165.) The ALJ did not mention these subsequent findings by Dr. Goldbaum that contradicted Dr. Lazar's findings and supported Plaintiff's credibility. Although the ALJ need not discuss every piece of evidence in the record, she must discuss significant probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Her failure to discuss these contradictory medical findings leaves the Court unable to assess whether she considered them or not in making her credibility findings. Finally, it appears that generally the medical providers believed Plaintiff's complaints of pain, including even Dr. Lazar, who referred Plaintiff to a chronic pain management program. (AR 117.) The ALJ failed to consider that evidence as well, instead relying on one notation of a clinically significant Waddell test.

In further support of her finding that Plaintiff exhibited "symptom magnification", the ALJ pointed to Dr. Higginbotham's observation in an examination of Plaintiff that she was very anxious during osteopathic manipulative therapy, and that after awhile he "was not quite sure as to why she was anxious as she was. She seemed to be able to turn this off and on." (AR 195.) The ALJ's finding of symptom magnification is not supported by this document. Dr. Higginbotham did not comment on whether Plaintiff was exaggerating or magnifying her symptoms, only that she was overly anxious and was able to turn that off and on. As to her credibility on the pain issue associated with her back, he obviously believed her as he diagnosed "Costovertebral ligamentous strain, mid thoracic spine" and referred her to various types of therapy for her pain associated with same, including going to a chronic pain specialist. (*Id.* 191-200.) The ALJ was again making speculative inferences from a medical record which is impermissible.[2]

Finally, I find that the ALJ improperly discounted Plaintiff's complaints of pain. In *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983), the Tenth Circuit cast a skeptical eye on the ALJ's conclusion on credibility in light of the heavy reliance he placed on the opinion of a state agency physician, particularly because the claimant's complaints of pain were supported "by a panel of physicians who have treated him over an extended period of time." *Id.* at 414; *see also Romero v. Astrue*, No. 06-6305, 2007 WL 2110899,

---

[2]  While the Commissioner refers to evidence of malingering, the ALJ never used this term and the evidence cited does not support this assertion. Similarly, the Commissioner's citation to *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990), in which there was actual evidence of exaggeration or falsifying of the symptoms, is also misplaced. Finally, the Commissioner's post hoc arguments to support the ALJ's credibility findings are improper and will not be considered. The decision must be based on the reasons given by the ALJ, and must stand or fall on this basis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985).

at *2 (10th Cir. 2007) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence). Here also, the medical providers clearly substantiated Plaintiff's complaints of pain and there is little to any evidence to show that Plaintiff's pain complaints were not credible. Thus, the ALJ's decision to completely discount Plaintiff's complaints of pain and not consider the effects of Plaintiff's pain on her ability to work is not supported by substantial evidence.

The Tenth Circuit has made clear that "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do. . . work." *Id.* Accordingly, I find that the ALJ erred in simply discounting Plaintiff's complaints of pain.

C.     The Appropriate Remedy

Based on the above errors, I must address whether the case should be reversed for further factfinding or reversed outright with an award of benefits. I agree with Plaintiff that outright reversal with an award of benefits is appropriate rather than a remand for further fact finding.

First, this case was already remanded from the Commissioner to the ALJs two previous times to properly weigh the medical evidence and the opinions of the treating

-21-

providers. Despite this, the ALJ on the third attempt still failed to properly evaluate and weigh the medical evidence and Plaintiff's impairments. Remanding this case yet again for an ALJ to make another attempt to weigh the evidence seems counterproductive. The Tenth Circuit has reversed in situations similar to this. *See Sisco v. U.S. Dept. of Health & Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (the Commissioner "is not entitled to adjudicate a case *ad infinitum* until he correctly applies the proper legal standard and gathers evidence to support his conclusion").[3]

Second and more importantly, the Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988) (further quotations omitted). In other words, reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id.*

In this case, the denial of benefits was made at step five of the sequential evaluation process, at which step the burden had shifted to the Commissioner to prove that Plaintiff is capable of performing other work which exists in the economy. As

---

[3] *See also Stephens v. Apfel*, No. 97-6090, 1998 WL 42524, at *3 (10th Cir. 1998) ("This case has dragged on through eight years and three inadequate ALJ decisions.... Under the circumstances, we conclude that an award of benefits is appropriate"); *Havice v. Chater*, No. 96-5074, 1997 WL 8852, at *7 (10th Cir. 1997) ("After three hearings, the Secretary still has not met her burden of showing that the claimant retained the ability to perform a significant number of jobs in the economy....The case is remanded, therefore, for an immediate award of disability benefits"); *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) ("In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award of benefits").

discussed above, the evidence in the record from the treating sources during the period in question supports a finding that Plaintiff is unable to perform sedentary work. Even treating source Dr. Sachtelben who issued an opinion prior to the amended onset date supports a finding that Plaintiff cannot perform a full range of sedentary work. The only evidence to the contrary is the opinion of the nonexamining State Agency Single Decision Maker. That opinion by itself does not constitute substantial evidence. Thus, the evidence fully supports a determination that Plaintiff is disabled at step five and is entitled to the benefits for which she applied.

III.     CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for an immediate award of benefits to Plaintiff Marlena Grabczyk.

Dated September 30, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge